JUSTO BARROS, Plaintiff and Appellant, *v.* MARGARITA PADIAL DE GAOS, Defendant and Appellee.

No. 3385. Argued January 29, 1925.—Decided March 26, 1926.

*Francisco Soto Gras* for the appellant. *R. Rivera Zayas* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Independently of the numerous other cases that needed close examination, some of them apparently calling for preference, the decision of this case has been delayed due to the fact that our previous jurisprudence has in effect been challenged.

The District Court of San Juan declared an action prescribed and said:

"There is only one question to decide:

"Whether, the promissory note sued for in this action having been executed in favor of the plaintiff or his order, we should apply the provisions of the Code of Commerce or the provisions of the Civil Code in force.

"If we apply the former we shall have to dismiss the action because it has prescribed inasmuch as the note became due on April 20, 1915. As a ground for the rebuttal of defendant's plea of prescription the plaintiff's attorney contends in his brief that the Code of Commerce simply raises a presumption of the commercial character of the notes or 'vales' executed to their order, but that the note, ac-

cording to defendant's contention, having originated in the present-
ment of a simple loan transaction consummated between the plaintiff
and the defendant, such presumption may be regarded as destroyed.

"We do not agree with this opinion. On the contrary, we think
that the fact that the note was executed as an acknowledgment of a
loan made by the plaintiff to the defendant, does not take away its
commercial character, such loan so contracted being a transaction
that, according to the Code of Commerce and the opinion of the
Supreme Court in the case of Hernández v. Muñoz, 10 P.R.R. 16,
should be presumed to be a commercial transaction in the absence of
proof to the contrary.

"The plaintiff has produced no evidence to destroy this presump-
tion but relies exclusively upon his plea, supra, that the note has its
origin in a simple loan. We do not consider this sufficient. The
greater part of the notes made to order are mere formalities of loan
transactions, and therefore, following the reasoning of the attorney
for plaintiff, we should almost entirely destroy the presumption
created in favor of such obligations by the Code of Commerce
eliminating those that had their origin in transactions of that kind."

■ Some appeal has been made to us on the ground that
prescription of actions is a defense not generally favored by
the courts. This is not altogether the modern view as the
following citation will show:

"Although the statute of limitations has been regarded by some
of the earlier decisions and some comparatively late cases as an
unconscionable and dishonorable defense, the attitude of the courts
generally has long since been to view such statutes with favor, or at
least as honorable and legitimate defenses, as founded on sound
policy, and as being beneficial in their effects, and hence it may be
laid down as a general rule that they are entitled to receive if not
a liberal, at least a reasonable construction in furtherance of their
manifest object, although it is said that courts are not swift in
lending their aid to a defense of this sort. Thus in the construction
of a statute of limitations general words are to have a general opera-
tion, and the statute is not to be subjected to judicial exceptions
arising from a supposed equity—in other words, the courts cannot
engraft on the statute exceptions or qualifications not clearly ex-
pressed in the statute itself or clearly established by judicial au-
thority. On the other hand it is a familiar principle that a statute
of limitations should not be applied to cases not clearly within its

provisions; it should not be extended by construction. And lapse of time will not bar a suit on a right of action given by a statute which is inconsistent with the statute of limitations." 37 C. J. 689.

The former attitude of the courts perhaps arises when the fact of prescription is controverted or even perhaps when the question of law proximately causes the action to prescribe. Prescription here is only the indirect result of declaring this document mercantile. In general, whether a document is mercantile or not would affect other substantial rights, the question of who are necessary parties and the negotiability of the instrument. An analogy is presented by the common law of England. A right of action assigned in general called for a suit in the name of the assignor to the use of the assignee and practically permitted all defenses that were available against the said assignor. A negotiable note in most cases eliminated these defenses. The same situation arises under our own Code of Commerce.

 Sections 2 and 532 of the Code of Commerce provide as follows:

"Art. 2. Commercial transactions, be they consummated by merchants or not, whether they are specified in this Code or not, shall be governed by the provisions contained in the same; in the absence of such provisions, by the commercial customs generally observed in each place; and in the absence of both, by those of the common law.

"Commercial transactions shall be considered those enumerated in this Code and any others of a similar character.

"Art. 532. Drafts payable to order between merchants and the bills or promissory notes likewise payable to order, which arise from commercial transactions, shall produce the same obligations and effects as bills of exchange, except with regard to acceptance, which is a quality pertaining to latter only.

"Bills or promissory notes which are not payable to order shall be considered simple promises to pay subject to the common law or the commercial law according to their nature, excepting the provisions contained in the following title."

We may frankly concede that nowhere in either of these

sections does it say that all promissory notes drawn to the order of the payee are presumed to be mercantile. Directly section 532 only gives promissory notes the same effects as bills of exchange when the former arise from commercial transactions. Section 532, however, in its first paragraph, with certain exceptions, is allocating all promissory notes to all bills of exchange. The second clause is the one from which the inference may be drawn that the Legislature deems that notes not drawn to the order were not to be considered as commercial, that its intention is that notes drawn to the order should be in fact considered commercial. The second clause may be classified a case of *expressio unius est exclusio alterius*. We gather from section 532 alone what the intention of the Legislature was.

Section 2 gives the commercial public and hence the courts even greater scope. Commercial transactions are not limited to the acts specified in the Code of Commerce. Any others of a similar character or those becoming so by general custom fall within the class. A promissory note drawn to the order is, it may be said, universally considered to be a commercial transaction, and by the custom of all places. In section 532 the Legislature was at best preserving the rights of parties to show that an instrument was not commercial. Further to show the general intention of the Legislature is section 1138 of the Civil Code, as follows:

"Section 1138.—Payments of debts of money shall be made in the specie stipulated and, should it not be possible to deliver the specie, in legal silver or gold coin current in Porto Rico.

"The delivery of promissory notes to order or drafts or other commercial paper shall only produce the effects of payment when collected or when, by the fault of the creditor, their value has been affected.

"In the meantime the action arising from the original obligation shall be suspended."

The Legislature showed that promissory notes to the order fall within commercial transactions.

This court, until now, has uniformly held that a promissory note drawn to order has presumptively a commercial character. *Hernández* v. *Muñiz*, 10 P.R.R. 16; *Rosaly* v. *Alvarado*, 17 P.R.R. 100; *J. Ochoa y Hermano* v. *Heirs or Successors of Lanza*, 17 P.R.R. 398; *Vázquez* v. *Laíno*, 23 P.R.R. 218; *Román* v. *Martínez*, 25 P.R.R. 610; *Fernández* v. *Ruiz Soler*, 27 P.R.R. 74, and *Vázquez* v. *Freiría*, 27 P.R.R. 764. To hold otherwise would interfere with the rule of *stare decisis* or something similar, even supposing that we were in the least disposed on a first original inspection to put a different interpretation on the statute. The decision of the Supreme Court of Spain of 1904 and the Philippine decisions, whether they may be distinguished or not, cannot change the rule firmly laid down by us and with which we are still entirely in harmony.

The principal argument, however, of the appellant is that the transaction was clearly shown to have originated in a loan, and that only in an exceptional case could a loan be considered commercial. The cases where loans are commercial are limited according to appellant. The commercial character of a note drawn to order is a universal one, applicable to all promissory notes. The method of Euler is applicable.

"A" represents the field of commercial transactions. "B" represents the field of loans. "C" represents that part of the territory common to both. Given the universality of a presumption, the appellant must show that the loan falls in

that part of "B" that is not included in "C". No matter how small "C" may be, a loan may fall within it and is not excluded from the commercial field. Where a presumption exists the person seeking to overcome it must exclude every possibility. Probabilities cannot avail him.

Section 311 of the Commercial Code is as follows:

"Art. 311.—A loan shall be considered commercial when the following conditions are present:

"1. That one of the contracting parties is a merchant.

"2. When the articles loaned are destined to commercial transactions."

If a person borrows money and executes a promissory note to order, the question arises whether he does not fall directly under subdivision 2. If a note to order is given, the party drawing it may be said to have converted a simple loan into a commercial transaction. In that case promissory notes to order would fall entirely in the field of commercial transactions. Indeed, given the general trend of the statutes quoted, we are inclined to think that in Porto Rico to give a note drawn to order is in itself to constitute a commercial transaction.

In any event, the burden to show otherwise is not removed by showing that loans generally or frequently are not endowed with a commercial character.

The judgment appealed from must be affirmed.